

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:08-CR-315

McKENLEY D. MASON, JR.

   Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the issue of the Defendant's sentencing under the Assimilated Crimes Act. The Court requested further briefing on the issue, which has now been submitted by both parties (Docket Nos. 28, 31). For the reasons set forth below, the Position on Sentencing of the Defendant is rejected.

**BACKGROUND**

On July 8, 2008, the Defendant was named in a five-count Indictment. Govt's Brief at 1. Count One charged the Defendant with Driving Under the Influence of Alcohol, his second offense within 10 years, in violation of 18 U.S.C. § 13, assimilating 1950 Code of Virginia, as amended, § 18.2-266 and 18.2-270. Id. Count Two charged the Defendant with Driving as a Habitual Offender, second Offense, in violation of 18 U.S.C. § 13, assimilating the

1

1950 Code of Virginia, as amended, § 46.2-357(B)(3). <u>Id.</u> Count Three charged the Defendant with Driving After Being Declared a Habitual Offender, while under the influence of alcohol or any other self-administered intoxicant, in violation of 18 U.S.C. § 13, assimilating the 1950 Code of Virginia, as amended, § 46.2-357(B)(3). <u>Id.</u> Count Four charged the Defendant with Possession of a Schedule I Controlled Substance, to wit: a quantity of marijuana, in violation of 21 U.S.C. § 844(a). <u>Id.</u> at 2. Count Five charged the Defendant with Abuse and Neglect of his 13-year-old Daughter, to wit: driving his vehicle under the influence of alcohol with his daughter as a passenger, in violation of 18 U.S.C. § 13, assimilating the 1950 Code of Virginia, as amended, § 18.2-371.1(B).[1] <u>Id.</u>

On September 9, 2008, the Defendant pled guilty to Counts Two and Four of the Indictment. <u>Id.</u> On December 12, 2008, the Defendant appeared before this Court for sentencing. Under the proffered Plea Agreement, the United States agreed to make a non-binding sentence recommendation to the Court of six months incarceration and six months of home electronic monitoring. At sentencing, the Court

---

[1] At the time he was indicted, the Defendant also had four prior convictions for Driving Under the Influence, and prior convictions for Reckless Driving, Speeding, Driving Without an Operator's License, Driving On a Suspended Operator's License, Follow Too Close Resulting In a Non-Injury Motor Vehicle Accident, and Habitual Offender (first offense). <u>See</u> Confidential Sentencing Report at 2.

2

raised the issue whether it could impose the sentence recommended by the United States under Count Two of the Indictment.

I. **The Assimilative Crimes Act**

The Virginia offense of driving while as a habitual offender is assimilated as federal law in certain federal enclaves within the Commonwealth, see 18 U.S.C. § 7, pursuant to the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13(a). According to the ACA, a person who commits a crime within a federal enclave, which is not otherwise "punishable by any enactment of Congress, [but which] would be punishable if committed . . . within the jurisdiction of the State . . . in which [the enclave] is situated . . . shall be guilty of a like offense and subject to a like punishment." Id.

It is settled law in the Fourth Circuit that, pursuant to U.S.S.G. § 2X5.1, the ACA dictates that federal sentences for assimilated crimes "*must fall within the minimum and maximum terms established by state law*, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible." United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990) (emphasis added). As such, the maximum and minimum mandatory sentences, as defined by the applicable state

3

law, are fixed guideposts for federal district courts to consider during sentencing. United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994).

After adhering to the state statutory limits, however, federal sentencing policy prevails. Importantly, the imposition of a sentence in accordance with the Sentencing Guidelines under the ACA "does not encompass every incident of a state's sentencing policy," Harris, 27 F.3d at 115, in that the ACA requires "only that the punishment be similar, not identical." United States v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996). Fundamentally, therefore, Fourth Circuit precedent dictates that a district court's sentence under the ACA must fall between the mandatory minimum and maximum sentence as prescribed by the relevant state law, "but the federal sentencing guidelines [and their accompanying policy considerations] determine the sentence within these limits."[2] Harris, 27 F.3d at 115 (quoting Pierce, 75 F.3d at 176); accord United States v. Clark, 361 F. Supp. 2d 502, 508 (E.D. Va. 2005) ("after adhering to the state statutory limits . . . federal sentencing policy prevails") (citation omitted).

---

[2] This general calculus, which is misleadingly expressed by the Fourth Circuit in categorical terms, is subject to one important caveat, discussed in section II. B., *infra*

4

### A. Sentencing Under Va. Code § 46.2-357(B)

As mentioned above, the applicable statutory sentencing range for the assimilated crime in Count Two is enumerated in Va. Code § 46.2-357(B), which provides that "such a person shall be guilty of a felony punishable by *confinement in a state correctional facility for not less than one year nor more than five years, one year of which shall be a mandatory minimum term of confinement* or, in the discretion of the jury or the court trying the case without a jury, *by mandatory minimum confinement in jail for a period of 12 months*." Id. (emphases added). Thus, quite clearly, the plain language of Va. Code § 46.2-357(B) requires a mandatory one-year "term of *confinement*" in a correctional facility. Id. (emphasis added).

Additionally, with respect to the nature of this one-year minimum sentence, the Virginia Court of Appeals has held that, "[b]ecause the one-year mandatory minimum sentence under Va. Code § 46.2-357(B)(2) may not be suspended, probation may not be imposed during this period and, thus, electronic incarceration . . . may not be employed." Cuffee-Smith v. Commonwealth, 39 Va. App. 476, 483 (2002). This interpretation of Va. Code § 46.2-357(B) binds the Court when fashioning a sentence under the ACA. United States v. Collins, 2006 U.S. Dist. LEXIS 3991, at

5

\*13 (D. Md. Jan. 31, 2006) (DiGirolamo, Mag. J); <u>United States v. Smith</u>, 965 F. Supp. 756, 758 (E.D. Va. 1997).

### B. Substitute Sentencing Under the Sentencing Guidelines

In sharp contrast to the policy articulated by the Virginia Court of Appeals in <u>Cuffee-Smith</u>, the Sentencing Guidelines would normally permit this Court to impose a sentence of home detention under the "Schedule of Substitute Punishments." See U.S.S.G. § 5C1.1(e)(3). Specifically, under the Sentencing Guidelines, "one day of home detention [may be substituted] for one day of imprisonment." <u>Id.</u> When deciding whether to impose such a substitute punishment, 18 U.S.C. § 3553(b) governs the inquiry and instructs the Court to impose "an appropriate sentence" after considering the seriousness of the offense, promotion of respect for the law, just punishment, adequate deterrence from criminal conduct, protection of the public, and the Defendant's need for "educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Accordingly, the primary issue respecting sentencing in this case is whether the ACA requires the Court to comply with the mandatory one-year "term of confinement" in a state correctional facility, as interpreted by the courts

6

of the Commonwealth of Virginia under Va. Code § 46.2-357(B), or whether the Court may impose the type of "substitute punishment" requested by the Defendant under U.S.S.G. § 5C1.1(e)(3).

## II. Whether The Defendant May Be Sentenced To A Six-Month Period Of Home Incarceration

In advocating for a substitute sentence of six months imprisonment and six months home incarceration, the Defendant, citing United States v. Montigue, 357 F.Supp.2d 939 (E.D. Va. 2005) (Miller, Mag. J.), and United States v. Clark, 361 F.Supp.2d 502 (E.D. Va. 2005), contends that such sentences have been allowed in two separate decisions in the Eastern District of Virginia.

In Montigue and Clark, the defendants were convicted of driving under the influence, in violation of Va. Code § 18.2-266 (2004), a statute which requires "confinement in jail" for a certain number of days. Id. In each decision, the court agreed that it could not depart from the established statutory minimum sentence under Virginia law. See Clark, 361 F. Supp. 2d at 508; Montigue, 357 F.Supp.2d at 941. Nevertheless, despite the requirement that the defendants serve the statutory minimum sentence "in jail," after finding a "tension between the letter of the state statute versus federal sentencing policy," Montigue, 357

7

F.Supp.2d at 941, both courts allowed the defendants to serve a portion of their mandatory sentence on "home confinement" pursuant to U.S.S.G. § 5C1.1(e)(3). Clark, 361 F. Supp. 2d at 508; Montigue, 357 F.Supp.2d at 941.

Contrary to the position of the Government, the analytical approach employed by the courts in Montigue and Clark was sound.[3] Contrary to the position of the Defendant, however, this approach does not actually provide a reason for this Court to deviate from the standard minimum sentence of "confinement for one year" under Va. Code § 46.2-357(B).

### A. Traditional Sentencing Under The ACA

As noted above, when assessing a sentence under the ACA, a district court must first determine the established statutory parameters for the sentence. Young, 916 F.2d at 150. Then, after the applicable statutory parameters have been defined, the district court should apply federal sentencing policy to determine the proper sentence within those parameters. Pierce, 75 F.3d at 176; Young, 916 F.2d at 150.

---

[3] Although the United States originally joined the Defendant in contending that home electronic monitoring was available under Va. Code § 46.2-357(B), the United States now has concluded that its previous position was in error and that Montigue and Clark were "incorrectly decided." Govt's Brief at 3.

8

In this case, the plain language of Va. Code § 46.2-357(B) mandates a one-year sentence of "confinement" in a state correctional facility or jail. See Va. Code § 46.2-357(B). Additionally, this period of incarceration cannot be satisfied by home electronic monitoring. Cuffee-Smith, 39 Va. App. at 483. Therefore, contrary to the Defendant's suggestion, this Court evidently has "no authority to place [Mason] on home electronic monitoring in lieu of his one-year mandatory minimum period of incarceration." Pilson v. Commonwealth, 52 Va. App. 442, 444 (2008) (citing Cuffee-Smith, 39 Va. App. at 483).

B.   **Policy Conflicts And Selective Assimilation**

The foregoing calculus, however, is subject to one important exception. Namely, courts consistently have declined to assimilate certain provisions of state law if the relevant state law provision conflicts with federal sentencing policy. United States v. Kelly, 989 F.2d 162, 164 (4th Cir. 1993) ("the exception to the rule against selective incorporation"); accord United States v. Payne, 1997 U.S. App. LEXIS 12651, at *3 (4th Cir. June 2, 1997). In such situations, the district court may decline to assimilate the state's maximum or minimum sentence during sentencing.

9

"The areas which have been found to conflict with federal policy so as not to warrant assimilation have, for the most part, involved matters pertaining to parole, probation, good time credits, and special assessment." Collins, 2006 U.S. Dist. LEXIS at *13 n.4; see, e.g., Pierce, 75 F.3d at 176, Harris, 27 F.3d at 115; United States v. Pate, 321 F.3d 1373, 1376 (11th Cir. 2003) (declining to assimilate state law requiring minimum periods of incarceration before parole). Additionally, "federal courts may selectively incorporate an assimilated state statute *only if it poses a direct conflict with federal law or sentencing policy.* Kelly did not hold, nor does it lend any support for a general rule, that federal courts may disregard a mandatory minimum sentence or go beyond a maximum allowable sentence under an assimilated state statute." Clark, 361 F. Supp. 2d at 508

Here, it is apparent that "there is no federal statute governing the offenses charged, and assimilation will not present any conflict with federal policy." Collins, 2006 U.S. Dist. LEXIS at *13 (finding no conflict when the defendant was charged with driving a motor vehicle on a highway with a suspended license). In Virginia, it is clear that, through the Habitual Offender Act, the "Virginia General Assembly evinced its intent to enact a

new, stiffer law dealing with those who commit serious traffic violations." United States v. Dawson, 215 F.3d 1322 (4th Cir. 2000) (unpublished). Additionally, federal courts have observed that the violation of such statutes, especially when combined with other infractions such as driving under the influence, creates a "serious criminal record." Horr v. Maine, 2008 U.S. Dist. LEXIS 90153, at *29 (D. Me. Nov. 4, 2008); accord Marston v. Oliver, 485 F.2d 705, 709 (4th Cir. 1973) (in explicating the policies underlying the Virginia Habitual Offender Act, the court noted the danger of allowing a "large body of criminally careless drivers, whose past conduct represented a serious hazard to the traveling public, to resume their use of the public highways."). Moreover, it is significant that, in his supplemental briefing, the Defendant has not identified any potential conflict between federal and state law or policy if home electronic monitoring is not implemented in this case.

In light of the Defendant's horrendous driving record, there certainly is no reason to deviate from Virginia mandatory minimum sentence under Va. Code § 46.2-357(B), which requires one year confinement in a state correctional facility. Hence, the sentence which the parties agreed to recommend is neither available nor appropriate.

11

## CONCLUSION

For the foregoing reasons, the Court concludes the Defendant's Position on Sentencing (Docket No. 31) is incorrect. Instead, using the factors set forth in 18 U.S.C. § 3553(a), the Court will impose a sentence between 1 and 5 years of incarceration on Count Two. Consequently, it is necessary for the Court to inquire whether the Defendant now wishes to withdraw his guilty plea, which was originally based on an invalid recommendation by the United States. The Defendant shall submit his decision on whether he wishes to withdraw his guilty plea by January 30, 2009.

It is so ORDERED.

/s/ REP
Senior United States District Judge

Date: January 15, 2009
Richmond, Virginia